**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 DEC 13  AM 8: 24

CLERK _____
SO. DIST. OF GA.

| | |
|---|---|
| SELVIN J. RIVERA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 305-128 |
| | ) |
| MICHAEL PUGH, Warden, | ) |
| | ) |
| Respondent. | ) |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Selvin J. Rivera, an inmate incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, has filed a petition under Title 28, United States Code, Section 2241 contesting the execution of his sentence of confinement. Respondent has filed his response to the petition. For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that the petition be **DISMISSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

The Federal Bureau of Prisons ("BOP") has contracted with the Corrections Corporation of America ("CCA"), a private corporation, to house federal prisoners at MCF, a facility operated by CCA. The contract requires CCA to follow the BOP Program Statement for Disciplinary Procedures. While incarcerated at MCF, petitioner committed a

disciplinary infraction, which resulted in his appearance before a Disciplinary Hearing

Officer ("DHO") and the disallowance of 148 days of Good Conduct Time ("GCT") as a

disciplinary sanction.[1] Petitioner also has been moved to the "King Unit, B-Pod" section of

the prison, which he characterizes as "a kind of halfway house to disciplinary segregation."

Pet. at 8.


## II. DISCUSSION

Petitioner raises three grounds for relief in his petition.  First, he claims that the

BOP's contract with CCA constitutes an unlawful delegation of the BOP's authority to house

federal prisoners.  Second, he argues that under the BOP's Program Statement 5270.07,

authority to disallow GCT in disciplinary proceedings is limited to federal prisons, not state

or private prison facilities.  Third, he argues that his placement in King Unit is an unlawful

"pretext for administrative segregation."  Petitioner's first two claims are interrelated and

will be address together.

### A. Authority to Disallow GCT

Petitioner argues that CCA does not meet the regulatory definition of a federal prison

or correctional institution, and that it therefore is not authorized to enforce federal regulations

providing for the forfeiture of GCT.  Respondent counters by noting that a BOP

administrator reviewed petitioner's disciplinary proceedings and determined that the

---

[1] According to his petition, petitioner was due to be released from prison on October 29, 2005.  His release date was changed to June 21, 2006, after the forfeiture of GCT.  Pet. Reply Mem. at 1.  According to documents submitted by respondent, however, petitioner only lost 148 days of GCT, of which only forty days were vested.  Resp. Ex. B.

proceedings were conducted in substantial compliance with the applicable BOP Program Statement, the weight of the evidence supported the DHO's decision, and the sanctions imposed were appropriate. Resp. Ex. B. Respondent argues that because the BOP has approved of CCA's disciplinary proceedings and their results, petitioner's arguments about the delegation of federal authority to CCA is moot.

The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). The BOP's authority in this area may include contracting out the care of prisoners to private facilities. 18 U.S.C. § 4013(a)(3). The relationship between the federal government and facilities which house federal inmates pursuant to contract has been described as follows:

> Even though the federal government may enter into contracts with a local agency for imprisonment of federal prisoners, "no 'federal agency or officer thereof has any authority to exercise any control over the day to day management of the local institution or over the details of the custody and care of federal prisoners confined therein.'" . . . . 18 U.S.C. § 4001(b)(1), [provides] that "'[t]he control and management of Federal penal and correctional institutions. . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws. . .'" Therefore, when the Attorney General is not permitted to fulfill this role with respect to a penal facility, even when a contract for usage of that facility exists, the facility cannot properly be categorized a "Federal" prison.

United States v. Cardona, 266 F. Supp.2d 558, 560 (W.D. Tex. 2003) (internal citations omitted).

Here, petitioner relies on Cardona to support his contention that MCF, which is run by CCA, is not a "federal" prison. Petitioner points out, and respondent does not contest, that the "daily management of the facility, in addition to the care of all federal prisoners

3

housed in MCF, is the sole responsibility of CCA and the employees hired by the corporation." Pet. at 7. Thus, the BOP has no direct or constructive control over managerial functions at MCF. For these reasons, the Court agrees that MCF is not a "federal" prison.

The Court must now determine whether MCF, as a non-federal facility, may nevertheless impose disciplinary sanctions as delegated by the BOP. The court in Carabollo-Rodriguez v. Pugh, CV 304-081 (S.D. Ga. June 13, 2005), recognized that "[i]t is well-established that federal agencies may not delegate their statutory authorities to private parties. However, '[t]he ultimate test of the validity of an agency's delegation of responsibility to a private party is whether the delegating agency retains final decision-making authority.'" Id. (citing Ocean Conservancy v. Evans, 260 F. Supp. 2d 1162, 1183 (M.D. Fla. 2003)). Here, the BOP determined that the disciplinary proceedings and resulting disallowance of GCT were proper. Resp. Ex. B, C. Because the BOP has retained final decision-making authority in the imposition of disciplinary sanctions, it has not unlawfully delegated its authority to CCA. Petitioner may not obtain relief on this ground.

**B. Petitioner's Confinement**

Petitioner next contends that his confinement in "King Unit, B-Pod" constitutes an unlawful restriction on his liberty. Petitioner was placed in King Unit after serving fifteen days of disciplinary segregation related to the behavior that also resulted in the disallowance of his GCT. Petitioner describes life in King Unit as follows:

> While there [a prisoner] may not [participate] in group activities available to the general population[.] [T]heir access to the library is restricted. Personal property is limited and there are few opportunities to earn money. Prison officials exercise some discretion over what reading materials inmates may receive from outside the prison. "Contact" visits with family and friends are

4

not permitted. Thus prisoners are separated from their visitors by a plexiglass partition and must communicate over telephones. Prisoners are searched after returning to the Control Unit.

Prisoners in the Control Unit may not communicate with other inmates in general population. Prison guards who work on the Control Unit are not specially trained. Inmates are placed in the Control Unit for indefinite periods of time, without periodic review of the reasons for their continued confinement in the Control Unit.

Pet. at 10. Petitioner concedes, however, that such confinement is "not intended as punishment. It's purpose rather is to deter and prevent violations of prison disciplinary rules and to protect prisoners, guards, and in some cases people outside the prison, or the society at large, against dangerous conduct by the prisoners." Pet. at 9.

Petitioner's description of King Unit does not differ significantly from the conditions of confinement at most prisons. Respondent points out that "the circumstances of confinement in King Unit, B-Pod are essentially the same as that for other nonsegregation inmates other than" that prisoners are not allowed to leave without appropriate clothing, that prisoners in King Unit are the last called for meals, and that prisoners in King Unit may only use a specified recreation yard. Supp. Resp. at 1, 2.

The Supreme Court has held that disciplinary segregation does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472, 485 (1995). To the extent that petitioner's confinement constitutes disciplinary segregation, the Court does not find it significantly different from the confinement conditions of the general prison population. Thus, petitioner's confinement does not implicate any sort of infringement of a cognizable liberty interest.

5

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DISMISSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.


SO REPORTED and RECOMMENDED this 13th day of December, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

6